UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| TROY E. LAMOREAU, | ) | |
|---|---|---|
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 2:16-cv-00423-JHR |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| *Acting Commissioner of Social Security*,[1] | ) | |
| | ) | |
| Defendant | ) | |

### *MEMORANDUM DECISION*[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the administrative law judge (i) made a mental residual functional capacity ("RFC") determination unsupported by substantial evidence, (ii) improperly rejected the opinion of treating counselor Megan Bowdich, L.C.P.C., (iii) provided no adequate reason for rejecting a social limitation assessed by agency nonexamining consultants Brian Stahl, Ph.D., and Mary A. Burkhart, Ph.D., and (iv) erred in evaluating the plaintiff's credibility. *See* Itemized

---

[1] Nancy A. Berryhill, who is now the Acting Commissioner of Social Security, is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 15, 2017, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 15.

1

Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (ECF No. 8) at 2-8. I conclude that the mental RFC determination is unsupported by substantial evidence, in part because of the administrative law judge's handling of the Burkhart and Stahl opinions. Accordingly, I remand this case for further proceedings consistent herewith.[3]

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through September 30, 2012, Finding 1, Record at 14; that he had severe impairments of depressive disorder, post-traumatic stress disorder ("PTSD"), and schizotypal personality features, Finding 3, *id.*; that he had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: he could understand, remember, and carry out simple, repetitive instructions and persist at that level of complexity for eight hours a day, five days a week consistently, needed to avoid interaction with the general public, but could interact appropriately with coworkers and supervisors, and could adapt to routine changes in the work setting, Finding 5, *id.* at 16; that, considering his age (32 years old, defined as a younger individual, on his original alleged disability onset date, December 31, 2004), education (limited), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 21-22; and that he, therefore, had not been disabled from April 5, 2011, his amended alleged disability onset date, through the date of the decision, March 27, 2015, Finding 11, *id.* at 22-23. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of

---

[3] I do not consider the plaintiff's remaining points of error.

the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The record contains four expert opinions bearing on the plaintiff's mental RFC. Based on a February 4, 2013, examination, agency examining consultant Edward Quinn, Ph.D., diagnosed the plaintiff with panic disorder with agoraphobia, generalized anxiety disorder, PTSD, and major depression, recurrent, moderate. *See* Record at 440. He summarized:

> [The plaintiff] should be able to follow work rules. He may have some difficulties at times interacting with others because of anxiety. He did not appear to have difficulties with judgment. He should be able to deal with some stressors. He should be able to function independently. He may have some issues with attention and concentration because of anxiety. Memory appears to be intact. He generally appears capable of completing job tasks. However, in a situation where he is with a group of people he may have increased problems. He may have increased problems with stressful jobs. He may have difficulties with complex job instructions at times. He demonstrates good social skills.

*Id.* at 439-40.

In a February 21, 2013, opinion, Dr. Burkhart found that the plaintiff had a severe anxiety disorder impairment and a nonsevere affective disorder impairment. *See id*. at 60. With the benefit of review of the Quinn opinion, which she indicated she gave great weight, *see id*. at 61, she concluded that the plaintiff had no limitations in understanding and memory, sustained concentration and persistence, or adaptation, but did have social interaction limitations, *see id*. at 62. She deemed him "able to interact with a few coworkers and supervisors, but due to reported anxiety no frequent public contact." *Id*. at 62. She explained: "[The plaintiff] goes to the store weekly. He presents with good social skills." *Id*.

In a July 17, 2013, opinion, Dr. Stahl concurred that the plaintiff had a severe anxiety disorder impairment and nonsevere affective disorder impairment. *See id*. at 81. Like Dr. Burkhart, he indicated that he gave the Quinn opinion great weight. *See id*. at 83. However, while he found that the plaintiff had no limitations in understanding and memory, he indicated that he had limitations in all other categories of mental functioning. *See id*. at 83-85. With respect to social functioning, his finding was nearly identical to that of Dr. Burkhart: that the plaintiff was "able to interact with a few coworkers and supervisors, but due to reported anxiety no frequent public contact." *Id*. at 84. He explained that the plaintiff "goes to the store" and "presents with good social skills at the CE [consultative examination]." *Id*.

Finally, in a February 18, 2015, opinion, treating counselor Bowdich indicated that the plaintiff had no useful ability to function in all but one of 18 work capacities, including the abilities to relate to co-workers and deal with the public. *See id*. at 874-876.

In May and June 2014, on referral from Bowdich, the plaintiff underwent a psychological evaluation by Aaron Blanchette, Psy.D. *See id.* at 601-10. With the benefit of a clinical interview,

4

review of records, and testing, Dr. Blanchette diagnosed him with chronic PTSD, dysthymic disorder, a brief psychotic disorder, in remission, and schizotypal personality features. *See id*. at 603, 605.

Dr. Blanchette described the plaintiff as "a very anxious individual, especially in public or around crowds." *Id*. at 606. He explained:

> He is hypervigilant and anticipates being hurt or otherwise wronged by others. These symptoms are believed to be largely related to his diagnosed PTSD; the traumatic experiences he has had with others have made it difficult for him to feel safe around most people.

*Id*.

He noted that the plaintiff had "a history of disorganized and bizarre thoughts and behavior, as well as some unusual sensory experiences[,]" and had been "diagnosed with psychotic disorder NOS [not otherwise specified] during [an] inpatient stay at Mid Coast Hospital in April 2014." *Id*.

He stated that, although the plaintiff's "current symptoms were not consistent with Schizophrenia, . . . [h]e did report some odd beliefs, perceptual experiences and social behaviors (i.e. defecating in his pants in his bosses['] office because the bathroom was too dirty) that were unusual." *Id*. He added:

> [G]iven his somewhat paranoid thinking and social withdrawal, it is hypothesized that he displays features of a schizotypal personality. These features involve relatively loose and inconsistent reality testing, which may predispose [the plaintiff] to acute psychotic episodes during times of stress.

*Id*.

The administrative law judge stated that she had not given Bowdich's opinion great weight for several reasons. *See id*. at 20-21. She assigned the Quinn opinion great weight, explaining:

> The undersigned finds [the Quinn] report is generally consistent with the ability to perform simple, repetitive skills with no public contact. Dr. Quinn indicated that the [plaintiff] had good social skills, but that he could have increased symptoms if in a group of people, consistent with being around crowds or in public. Dr. Quinn

5

> also indicated that complex instructions and increased stress could cause issues, which is why the [plaintiff] was limited to simple, repetitive instructions.

*Id*. at 21 (citation omitted). She gave the Burkhart and Stahl opinions "only some weight[,]" stating:

> While some of the limitations are the same, like simple, repetitive work with no public contact, the undersigned did not find support in the record for further social limitations. In addition, [Drs. Burkhart and Stahl] only found a severe anxiety disorder, while the undersigned found other severe mental impairments. The [RFC] above is more consistent with the opinion of Dr. Quinn as a whole.

*Id*.

As the plaintiff observes, *see* Statement of Errors at 2, this explanation is problematic in that the administrative law judge assigned less weight to the Burkhart and Stahl opinions in part on the basis that they did not have the benefit of review of later-adduced evidence that included Dr. Blanchette's diagnosis of schizotypal personality features, which she deemed a severe impairment. Yet, she gave great weight to the opinion of Dr. Quinn, whose opinion also predated the Blanchette report. She did not explain how her RFC determination reflected limitations flowing from the plaintiff's schizotypal personality features, and it is not self-evident that it does.

It is a basic tenet of Social Security law that an administrative law judge may not assess an RFC based on his or her own interpretation of raw medical evidence unless it is possible to render a commonsense judgment about that evidence. *See, e.g.*, *Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990). As the plaintiff argues, *see* Statement of Errors at 4-5, in the circumstances, in which the Blanchette report and diagnosis postdated the Quinn opinion, the administrative law judge necessarily interpreted raw medical evidence in concluding that the

Quinn opinion adequately captured any limitations flowing from schizotypal personality features. This was not a commonsense judgment.[4]

Further, as the plaintiff contends, *see id*. at 3, although the administrative law judge purported to give great weight to the Quinn opinion, her RFC determination did not adequately reflect his findings as to social functioning. Dr. Quinn did not state that the plaintiff might have increased problems only with the public or in crowds but rather, in situations in which he was "with a group of people[.]" Record at 440. Drs. Burkhart and Stahl, who both gave the Quinn opinion great weight, translated this into a finding that the plaintiff was "able to interact with a few coworkers and supervisors[,]" with "no frequent public contact." *Id*. at 62, 84.

As the commissioner notes, *see* Opposition at 9-10, the administrative law judge did not ignore the Burkhart/Stahl restriction: she stated that she "did not find support in the record for further social limitations[,]" Record at 21. Yet, she did not explain why. *See id*. To fill that void, the commissioner points to (i) comments and sub-findings by Drs. Burkhart and Stahl, (ii) the fact that, in assessing the plaintiff's social limitations, Dr. Quinn employed qualifiers such as "may" and "likely," as a result of which he provided no actual RFC opinion, and (iii) other evidence of record, some of which the administrative law judge discussed in other portions of her decision. Opposition at 9-11.

---

[4] The commissioner argues that the Quinn opinion captured any limitations flowing from the plaintiff's schizotypal personality features because Dr. Quinn considered similar symptomatology, including hypervigilance and paranoid behavior. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 12) at 13 (citing Record at 437-38). The administrative law judge made no such express finding. *See* Record at 18-21. To the extent one can infer that she so found, she exceeded the bounds of her competence as a layperson. Like Dr. Quinn, Dr. Blanchette noted that the plaintiff was hypervigilant and anticipated being hurt or wronged by others, but he attributed those symptoms to the plaintiff's already-diagnosed PTSD. *See id*. at 606. He seemingly described a broader set of symptoms attributable to the plaintiff's schizotypal personality features, including not only "somewhat paranoid thinking and social withdrawal" but also "relatively loose and inconsistent reality testing, which may predispose [him] to acute psychotic episodes during times of stress." *Id*.

7

The first two points do not carry the day because they are *post-hoc* rationalizations. Pursuant to *SEC v. Chenery Corp.,* 332 U.S. 194 (1947), "a reviewing court cannot affirm an agency's decision on the basis of a *post hoc* rationalization but must affirm, if at all, on the basis of a rationale actually articulated by the agency decision-maker") (citation and internal quotation marks omitted). While "[a]n exception to the *Chenery* rule exists when a remand will amount to no more than an empty exercise because, for example, application of the correct legal standard could lead to only one conclusion[,]" *id.* (citation and internal quotation marks omitted), the commissioner does not acknowledge *Chenery*, let alone argue that the exception pertains here, *see* Opposition at 9-11.

In any event, the administrative law judge did not discount the Quinn opinion on the basis that it was qualified. To the contrary, she gave it great weight. Yet, as discussed above, she misconstrued it as consistent with her omission of any limitation on interactions with coworkers and supervisors.

Nor does the third point carry the day. In the absence of an expert opinion that, contrary to the findings of Drs. Burkhart and Stahl, the plaintiff had no limitations in dealing with supervisors and coworkers, the administrative law judge could so determine only to the extent that she could make a commonsense judgment that this was so. As discussed above, on the evidence of record as a whole, including that unseen by Drs. Quinn, Burkhart, and Stahl, she could not.

At oral argument, counsel for the commissioner further contended that the Burkhart/Stahl finding did not represent a *limitation* but, rather, an *ability* – the ability to interact with a few coworkers and supervisors. Therefore, he reasoned, the Burkhart and Stahl opinions support the administrative law judge's finding that the plaintiff was *able* to interact with coworkers and supervisors.

However, as the plaintiff's counsel persuasively rejoined, the Burkhart/Stahl finding can only reasonably be understood as a *restriction* to interacting with only a few coworkers and supervisors, representing a significant limitation on the ability to engage in work. Indeed, the plaintiff's counsel argued, and counsel for the commissioner conceded, that had the administrative law judge adopted that restriction, it would have undermined her reliance on the so-called "Grid," the Medical-Vocational Guidelines contained in Appendix 2 to Subpart P, 20 C.F.R. § 404, to carry the commissioner's Step 5 burden of demonstrating that the plaintiff was capable of performing other work. As counsel for the commissioner acknowledged, with the addition of the Burkhart/Stahl finding, vocational testimony would have been required to assess the impact of the plaintiff's restrictions on his ability to perform other work.[5]

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **VACATED**, and the case is **REMANDED** for proceedings consistent herewith.

Dated this 11th day of June, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[5] The Grid is a collection of tables used to direct findings of disability or nondisability depending on a claimant's maximum exertional capacity for work (sedentary, light, medium, heavy, or very heavy), age, education, and work experience. *See* 20 C.F.R. § 404.200.00(a). It does not factor in nonexertional limitations; for example, diminutions in a claimant's mental, vision, hearing, speech, balancing, and fingering abilities. *See id*; Social Security Ruling 96-9p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2016), at 156. Hence, the Grid generally cannot permissibly be used as a vehicle to meet the commissioner's Step 5 burden – vocational expert testimony ordinarily must be sought instead – if a claimant's nonexertional impairments significantly affect his or her ability "to perform the full range of jobs" at the appropriate exertional level. *Ortiz v. Secretary of Health & Human Servs.,* 890 F.2d 520, 524 (1st Cir. 1989) (citation and internal quotation marks omitted). "[A]though a nonexertional impairment can have a negligible effect, ordinarily the ALJ [administrative law judge] must back such a finding of negligible effect with the evidence to substantiate it, unless the matter is self-evident." *Seavey v. Barnhart,* 276 F.3d 1, 7 (1st Cir. 2001) (citation and internal quotation marks omitted).